Irwin BAUER, Plaintiff,

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

Civ. A. No. 70-C-481.

United States District Court,
E. D. Wisconsin.

Dec. 27, 1972.

C. M. Hanratty, Milwaukee, Wis., and Donald A. Frings, Hartford, Wis., for plaintiff.

Phillip E. Crump, Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION AND ORDER FOR PARTIAL SUMMARY JUDGMENT

REYNOLDS, District Judge.

In this diversity action, plaintiff, a citizen of Wisconsin, seeks $50,000 for permanent total disability under a group insurance policy issued by the defendant, a corporation with its home office in Pennsylvania. The defendant has asserted an affirmative defense of late notice of loss with reference to the time limit set forth in the policy. The parties have submitted a set of stipulated

facts for a decision by the court as to the validity of the defense.

On November 1, 1964, plaintiff enrolled in a "Voluntary Group Accident Insurance Plan for Salaried Employees" provided by his employer, Union Refrigerator Line, a division of General American Transportation Corporation. The accident policy was issued by defendant Insurance Company of North America ("INA"). The policy, which was not furnished to the plaintiff, provided broad casualty coverage including loss of life, loss of limb, and permanent disability. Permanent total disability coverage, according to the policy, would be provided after the insured could show continuing complete inability to engage in an occupation after a year in which his injuries kept him from being employed. The policy also provided:

"Notice of Claim: Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured or the beneficiary to the Company at Philadelphia, Pennsylvania, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company."

When the plaintiff enrolled in the group plan, he was not given a copy of the policy; instead, he received a booklet from his employer explaining in layman's language some of the highlights of the policy but not the notice requirements. On the bottom of the second page it explained:

"THIS BOOKLET IS INTENDED ONLY AS AN OUTLINE OF THE INSURANCE PLAN FOR GENERAL GUIDANCE. A GROUP ACCIDENT INSURANCE POLICY ISSUED BY INSURANCE COMPANY OF NORTH AMERICA SETS FORTH IN DETAIL THE TERMS AND CONDITIONS OF THE PLAN. * * * "

The booklet contained no further mention of any limitation of coverage except as discussed below.

On September 25, 1965, plaintiff was injured. He has not been employed since that day and claims total disability as defined in the policy issued by the defendant. Plaintiff started his attempt to collect on the policy with a letter dated January 28, 1968, addressed to the secretary of General American Transport who passed it on to defendant's authorized agent. This was the first notice of the injury to INA or any of its agents, though plaintiff's employer knew shortly after the accident that plaintiff would be unable to work because of the injury.

Since the time of the accident plaintiff has suffered severe headaches, almost daily near blackouts, and frequent dizziness. He has also suffered from loss of memory since the accident. Outside of the ordinary general healing of bruises and the concussion, plaintiff's doctor reports no change in his general condition and lists his disability as permanent and total.

The question brought to this court is whether plaintiff's letter to defendant was notice of injury within a sufficiently reasonable time to satisfy the terms of the policy. Plaintiff did not give notice within thirty days of the injury. While it is arguable that since the policy requires a year of continuous, total inability to work before any benefits are paid, and thus the claim does not come to fruition until one year after total disability, this argument is inapplicable here since notice was given one year and thirty days after the accident. According to the terms of the policy, the question is narrowed to a determination of whether notice was given "as soon thereafter as is reasonably possible."

This court's vision is not bounded solely by the four corners of the document. Other aspects of the relationship between plaintiff and defendant are relevant here. Defendant controlled the application process, and like the terms

of the contract it drafted, that process will be "construed" against it. Plaintiff was invited to participate in this coverage as a benefit of his employment. It is a group, not an individual plan, each insured choosing only the amount of coverage he wants to pay for. The insured signs the application form, not the policy itself. In fact, he is not even provided with a copy of the policy but receives a booklet intended as an "outline" of the plan for "general guidance" which says nothing about notice of injury. Stuck quietly at the bottom of the second page (the inside of the cover) is the note, previously quoted, which says that a group accident insurance policy issued by INA details the terms and conditions of the plan. I feel that this booklet, with its inclusions and omissions, is an important factor to consider in evaluating the defense under discussion here.

■ Wis.Stats. § 204.321(2)(a)(3), which is part of the Wisconsin statute regulating group accident and sickness insurance, provides in part "That the insurer will furnish to the policyholder [presumably the employer], for delivery to each employe or member of the insured group, an individual certificate setting forth a summary of the essential features of the insurance coverage of such employe or member. * * *" The booklet given to plaintiff is thus required by law to include all the "essential" features of the coverage, albeit in summary form. Generally this certificate is all the insured sees, though the policyholder does keep one copy of the general policy. In this case, the policy contains the previously quoted provision limiting the period in which notice of loss must be given. The booklet contains no direct reference to this important term which the policy sets forth as a condition precedent to recovery, and I find the time limit in which to file a claim is an essential feature which should have been included in the booklet.

This court has found only one Wisconsin case dealing with a conflict or dissimilarity between the booklet or certificate and the terms of the policy. Riske v. National Casualty Co., 268 Wis. 199, 67 N.W.2d 385 (1954), involved an amendment to the general policy after plaintiff had enrolled in the plan and before she applied for benefits. In that case plaintiff was issued a "Certificate Amendment," but it did not include the change later at issue. The Court relied on the predecessor to Wis.Stats. § 204.-321(2)(a)(3) in arriving at its decision to give effect to the terms contained in the certificate:

"* * * Moreover, we see no possible purpose in the requirement of a certificate by sec. 204.32(2)(b)2, Stats., *supra*, if the certificate so demanded is to be without effect. We perceive no persuasion in respondent's proposal that the certificate may misrepresent the insurance protection without redress so long as it refers the holder to the master policy. Under such an emasculation of the purpose of the statute the representations of the certificate merely set a trap for the insured. On the contrary, if the statute is to be credited with any virility, the insured is entitled to rely on the certificate which the law requires the insurer to give him, at least in so far as the certificate purports to deal with those subjects which the statute commands it to cover * * *." 268 Wis. at 207, 67 N.W.2d at 389.

In the instant case, the booklet's note referring the insured to an INA policy for the terms and conditions of the plan does not specify which policy, tell how to get one, or warn the insured that the booklet gives no "general outline" of the terms and conditions of the policy. It does not even recommend that the insured procure a copy of the policy or warn that it is in his interest to do so. The note does mention that each insured will be given an outline of benefits upon enrollment but says nothing about terms or conditions—indeed, nothing explains to the insured, who cannot be presumed to have had a legal education, what

those words mean in terms of his coverage. The only discouraging words in the booklet are on the last page under the heading "Limitations, Exclusions, Termination, Insurance Company." The "Limitations" are exclusively with respect to air travel, and the "Exclusions" concern intentional self-injury, war, the Armed Forces, and disease not related to an accident. "Termination" and "Insurance Company" are not relevant to the instant case.

Though *Riske* involved positive statements in the certificate that were at variance with provisions of the general policy, and the case before me involves the omission of an important condition from the certificate, I do not feel that this difference is significant in evaluating the validity of defendant's affirmative defense. Whether the point at issue is something the certificate said or failed to say makes no difference to the ease with which plaintiff is able to obtain a copy of the policy or his ability to decipher it. Though some cases, like Prudential Insurance Co. of America v. Clauson, 296 F.2d 76 (1st Cir. 1961), limit themselves to positive statements at variance with policy provisions, other cases, like Lewis v. Continental Life and Accident Co., 93 Idaho 348, 461 P.2d 243 (1969), reflect what I consider to be the better view—that a significant policy provision excluded from the certificate will not be enforced.

It is important to remember that this policy was not designed and in fact did not insure men educated in legal terminology (plaintiff has a high school education), and defendant was aware of this fact. Wis.Stats. § 204.-321(2)(a)(3) takes cognizance of this by providing that the certificate be in summary form, and there are many cases that refuse to enforce policy provisions written in such technical language as to be unintelligible to the ordinary reader. See Home Indemnity Co. v. Ware, 285 F.2d 852 (3rd Cir. 1960), and Lewis v. Continental Life and Accident Co., supra. Defendant cannot be allowed to hide behind the technical provisions of the policy when the misleading shortcomings of his booklet are exposed.

It is therefore ordered that partial summary judgment be granted to the plaintiff, striking the affirmative defense of late notice of loss.