MERCADO, by Harold A. Laufer, her Guardian ad Litem, and another, Appellants, v. MITCHELL, and others, Respondents: LEMKE, d/b/a Sunshine Amusements, Inc., Defendant.

*No. 75–713. Submitted on briefs February 8, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 532.)

For the appellants the cause was submitted on the brief of *Alexander N. Rubin,* attorney, and *Harold A. Laufer,* both of Milwaukee.

There was a joint brief by *Walther & Halling* of Milwaukee for defendant-respondent, James M. Mitchell; and *Riordan, Crivello, Sullivan & Carlson* of Milwaukee, for defendants-respondents, Donald R. Rust, E. Clark Bowerman, and American X/S Underwriters.

For defendant-respondent, Western World Insurance Company, Inc., the cause was submitted on the brief of *deVries, Vlasak & Schallert, S. C.* of Milwaukee.

BEILFUSS, C. J. On September 8, 1974, Maria Mercado, a minor, was injured while riding on a roller coaster on the grounds of St. Matthew's Congregation in Milwaukee. The roller coaster and other amusement devices were owned and operated by Jerome J. Lemke, d/b/a Sunshine Amusements, Inc. Maria Mercado, by her guardian *ad litem,* and her mother alleged in their complaint that Lemke was negligent in several respects in the operation of the roller coaster. The action also named Western World, Lemke's insurer, and the insur-

ance agents who assisted in obtaining the insurance for Lemke as defendants.

We are not here concerned with the negligence and damage aspects of the case. The issues before us deal with the insurance coverage.

The complaint alleges that Lemke went to Mitchell, a general agent, to obtain the insurance required by the city license ordinance, that Mitchell then contacted Rust and Bowerman, agents and officers of American X/S Underwriters, to obtain the insurance, and that American X/S Underwriters obtained the policy for Lemke from Western World. The complaint further alleges that the policy procured from Western World was fraudulently obtained through a conspiracy of Lemke, Mitchell, Rust, Bowerman and American X/S so as to provide incomplete coverage. The complaint, in one cause of action, alleges a conspiracy not to insure the roller coaster which caused Maria Mercado's injuries and, in another, negligence in not acquiring the necessary insurance coverage.

In furtherance of this conspiracy, Mercado alleges that E. Clark Bowerman filed a certificate with the City of Milwaukee which set forth that Lemke had procured insurance but did not specially indicate what was or was not covered, and that as such Lemke held himself out to the city as possessing a liability policy covering all injuries and damages which might arise or result from the operation of his carnival rides.

A license is required to operate a carnival in the City of Milwaukee. City of Milwaukee Ordinance No. 87.14 (4) states:

"No license shall be granted unless the applicant therefor shall have filed with the city clerk a public liability insurance policy. . . with the condition that the applicant will indemnify and save harmless the city of Milwaukee and its officers and agents and citizens

against any and all injuries and damages resulting or arising from the conducting of any carnival for which the license is issued or from the performance by the applicant or his agents of any negligence incident to or connected with the conduct of such carnival. . . ."

In this case the policy was not filed. A certificate was filed which only generally indicated the existence of the policy. The certificate was approved as to form by the Milwaukee City Attorney's office. The certificate provided:

"This certificate of insurance neither affirmatively nor negatively amends, extends or alters the coverage afforded by any policy described herein."[1]

The policy of insurance, dated June 28, 1974, stated that it applied only to the named hazards; no coverage was provided for any hazard or operation not specifically described. Nine amusement devices were listed in the description of hazards. The roller coaster was not among those listed.

Mitchell, Rust, Bowerman and American X/S Underwriters demurred. Western World filed an answer which set forth the affirmative defense that the roller coaster was not covered in the policy. Western World also alleged that it had never agreed to provide coverage for a roller coaster, was not asked to provide coverage for a roller coaster, and had no knowledge that Lemke was even operating a roller coaster. Western World then filed notice of motion and a motion for summary judgment.

A hearing was held on November 24, 1975 on Mitchell's demurrer. Even though Lemke was the principal named insured under the policy, Mercado argued that she had standing to sue Mitchell for failure to procure

---

[1] The certificate also set forth that the City of Milwaukee was an additional named insured.

an all-inclusive insurance policy because the Milwaukee ordinance made her a beneficiary. Therefore, Mercado, as an intended third-party beneficiary, had privity of contract to sue the agent for failure to procure insurance which comported with the ordinance. The trial court held that the ordinance did not give Mercado privity and that the agent owed her no duty. Mitchell's demurrer was sustained.

On December 1, 1975, a hearing was held on Western World's motion for summary judgment and on Rust's, Bowerman's and American X/S Underwriter's demurrer. The court sustained the demurrer for the same reasons noted *supra* in Mitchell's demurrer.

Mercado argued that Western World should be estopped from denying coverage because the certificate filed did not describe the items covered and thus led the city to believe that, as per the ordinance, all of Lemke's amusement devices were covered. The trial court granted Western World's motion for summary judgment and dismissed the complaint. The trial judge stated that the certificate was not fraudulent and if the city took it to mean that all of Lemke's rides were covered that was its fault, not Western World's.

We will first consider whether the trial court was in error in granting the motion for summary judgment in behalf of Western World.

The plaintiffs-appellants state the issue as follows:

"Should the entire contract of insurance consisting of the master policy and a certificate of insurance be construed against the insurer where the City of Milwaukee issued a license to do business to the insured based solely on the certificate which was silent as to the amusement rides covered under the policy. The insurer denied that a particular ride is covered under the master policy following a personal injury involving said ride."

It is not entirely clear from the appellants' arguments whether they contend that the policy and the certificate filed should be construed together, and as such are ambiguous, or whether they rely upon a theory of estoppel.

In support of its motion for summary judgment, Western World filed affidavits as required by the summary judgment statute and the multitude of cases construing the statute.

These affidavits set forth the policy provision:

"IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY IS WRITTEN, IT IS AGREED THAT INSURANCE AFFORDED BY THIS POLICY APPLIES ONLY TO THE HAZARDS DESCRIBED IN THE COVERAGE PART ATTACHED TO THIS POLICY. NO COVERAGE IS AFFORDED FOR ANY OPERATION OR HAZARD NOT SPECIFICALLY DESCRIBED."

They then identified and listed nine amusement rides that were covered by the policy. The roller coaster was not included. They further state that at no time was it ever asked to provide coverage for the roller coaster nor did it have any knowledge that Lemke in fact operated a roller coaster.

Significantly the plaintiffs-appellants filed no counter affidavits.

The certificate of insurance filed by Bowerman on behalf of Lemke, and accepted by the city, provided:

"This certificate of insurance neither affirmatively nor negatively amends, extends or alters the coverage afforded by any policy described herein.
". . .

"ADDITIONAL NAMED INSURED: CITY OF MILWAUKEE."

The plaintiffs-appellants argue that by virtue of the requirements of the ordinance, the policy and the certifi-

cate must be construed together and such an ambiguity exists which must be construed against the insurer.

In examining the policy and the certificate we find no ambiguity. The policy states in substance that it covers only the hazards described in the policy. The amusement ride that caused the injuries to plaintiff is not specifically described nor does the policy contain any general language that could conceivably include it. The caveat or disclaimer in the certificate creates no ambiguity. It clearly states in substance that there is no insurance coverage other than that described in the policy.

The law, often repeated, is that when an ambiguity exists in terms of the policy it is to be construed against the insurer who prepared the instrument and in favor of the insured. However, when no ambiguity exists it is equally clear the court cannot construe the policy, and in this case the policy and the certificate, to include insurance coverage not agreed to by the parties and for which no premium was assessed or paid. To do so would be to rewrite the contract of the parties—a power the court does not have.

In support of the plaintiffs' estoppel argument primary reliance is placed on two cases—*Riske v. National Casualty Co.*, 268 Wis. 199, 67 N.W.2d 385 (1954), and *Bauer v. Insurance Company of North America*, 351 F. Supp. 873 (E.D. Wis. 1972).

*Riske* concerned a group health and accident policy which insured union members and their dependents. The master policy originally included "spouse" as an insured dependent, but it was later amended and "wife" was substituted in its place. The plaintiff-appellant, a married woman, was issued a certificate which stated that it was "mere evidence" of insurance and was subject to the terms of the master policy. The certificate included

"spouse" among the definitions of dependent. The woman's husband was disabled and she sought benefits under the policy. This court ruled that the trial court erred by finding that the woman's rights were governed by the master policy and not by the certificate issued to her:

"We perceive no persuasion in respondent's proposal that the certificate may misrepresent the insurance protection without redress so long as it refers the holder to the master policy. . . .

". . . We need not hold that it has become a part of the insurance contract contrary to the declarations of both policy and certificate, but we have no doubt that the certificate, issued under the representations of the policy itself to an insured who has contributed to the premium, effectively estops the respondent from showing that the coverage, conditions, and limitations of the policy are different from those stated in the certificate and which the policy proclaims will be found there." 268 Wis. at 207.

*Bauer* is another group insurance policy case. *Bauer* cites *Riske* as authority, and has a significant difference in that it holds that the omission of a material policy term in the certificate estops the insurer from raising that term as an affirmative defense.

These cases may be distinguished. In both, the persons claiming coverage were named insureds who contributed to the premium. Furthermore, the group policies involved therein made reference to the certificates, while Western World's policy gives no indication that any certificate will be issued.

The doctrine of equitable estoppel can apply to insurance coverage. *Jeske v. General Accident Fire & Life Assur. Corp.*, 1 Wis.2d 70, 98, 83 N.W.2d 167 (1957). There are three elements to equitable estoppel: (1) Ac-

tion or inaction which induces, (2) reliance by another, (3) to his detriment.[2]

In this case we cannot conclude that there was action or inaction on the part of Western World which induced reasonable reliance upon the part of the injured party that insurance protection was afforded. The certificate clearly alerts anyone relying on it to the fact that coverage is limited to the terms of the policy. Western World cites *International Chiropractors Ins. v. Gonstead,* 71 Wis.2d 524, 528, 238 N.W.2d 725 (1972), for the legal proposition that the doctrine of estoppel cannot be used to expand insurance coverage. This is the general rule but there are exceptions such as *Riske* and *Bauer*—we deem them inapplicable here.

From the affidavits before the trial court, when it considered the motion for summary judgment, it is undisputed that Western World had no knowledge that Lemke had or operated a roller coaster. It extended coverage to all the amusement devices that it was asked to cover and the premiums it demanded were based upon those identified risks. Under these undisputed facts we hold Western World is not estopped from denying liability arising from Lemke's operation of the non-listed roller coaster and that judgment dismissing the complaint as to Western World should be affirmed.

The appellants also contend that the trial court erred by sustaining the demurrers of Mitchell, Rust, Bowerman and American X/S Underwriters. The trial court stated that because appellants were not a party to the insurance contract the agents owed them no duty. In

---

[2] *Schneider Fuel v. West Allis State Bank,* 70 Wis.2d 1041, 1054, 236 N.W.2d 266 (1975); *Kornitz v. Commonwealth Land Title Ins. Co.,* 81 Wis.2d 322, 331, 260 N.W.2d 680 (1978).

effect, the court found that appellants had no standing to sue the agents.

The apellants' position is that although it is ordinarily true that an injured third party has no privity or substantial interest in a liability policy, the Milwaukee ordinance operates to make them third-party beneficiaries.

In the absence of express provisions in the policy or statutory provisions which can be read into the policy, a standard liability policy does not make the injured party a third-party beneficiary.[3] The general rule on third-party beneficiaries in Wisconsin is that one claiming such status must show that the contract was entered into by the parties directly and primarily for his benefit. The benefit must be more than merely incidental to the agreement.[4]

The general rule that liability policies do not confer third-party beneficiary status upon injured parties must prevail, unless the insurance policy requirement of the Milwaukee ordinance can be read to mean that protection to its citizens was a primary purpose of the ordinance. In view of the ordinance the insurance policy, together with the certificate in question, can be construed to provide benefits to the injured party as well as the operator Lemke.

There can be no doubt that Ordinance 87.14(4) is a financial responsibility law which has as its primary purpose the assurance that injured persons will not be

---

[3] *Couch on Insurance* 2d, pp. 381–82, sec. 44:3 (1963).

[4] *Schell v. Knickelbein*, 77 Wis.2d 344, 348–349, 252 N.W.2d 921 (1977); *Lorenz v. Dreske*, 62 Wis.2d 273, 289, 214 N.W.2d 753 (1974); *Christnacht v. ILHR Dept.*, 68 Wis.2d 445, 453–54, 228 N.W.2d 690 (1975); *Mortgage Associates v. Monona Shores*, 47 Wis.2d 171, 190, 177 N.W.2d 340 (1970); *Winnebago Homes, Inc. v. Sheldon*, 29 Wis.2d 692, 699, 139 N.W.2d 606 (1966).

left without a meaningful remedy. Although liability insurance was originally designed to protect an insured against loss caused by his tort liability to a third person, it has come to be used openly and extensively as a device for insuring compensation to victims.[5] Ord. 87.14(4) indicates that the reason such a policy is a *sine qua non* for operating a carnival is primarily the protection of third parties, not necessarily the protection of the carnival operator. As such, when the ordinance is read into the policy it is apparent that a primary, if not the primary purpose of the policy, is to protect the citizens of the City of Milwaukee. We conclude the citizens of Milwaukee are third-party beneficiaries under the policy.

The fact that no particular third party is designated is not fatal. It is sufficient if a third party demonstrates that he or she is a member of a class of intended beneficiaries.[6] The intended class is the City of Milwaukee and its citizens, and appellants are members.

In the recent case of *Pappas v. Jack O. A. Nelsen Agency, Inc., supra,* we held that a third-party beneficiary has standing to sue an insurance agency for failure to provide adequate insurance. Therefore, as third-party beneficiaries, appellants can sue the instant agents for failing to procure sufficient insurance to protect them as per the ordinance based upon their allegations of conspiracy and negligence.

Respondents raise several challenges to the sufficiency of the complaint which are clearly ancillary to and dependent upon their standing arguments. Without the defense that appellants are not third-party beneficiaries,

---

[5] Keeton, *Basic Text on Insurance Law*, sec. 4.8(a) (1971).

[6] *Pappas v. Jack O. A. Nelsen Agency, Inc.,* 81 Wis.2d 363, 371, 260 N.W.2d 721 (1978); 17 Am. Jur.2d, *Contracts*, sec. 306 (1964).

these challenges present no bases for affirming the demurrers.

The allegations of consipracy and negligence are minimal, however they are sufficient to withstand a challenge by demurrer.

*By the Court.*—The judgment dismissing the complaint as to Western World is affirmed; the orders sustaining the demurrers of Mitchell, Rusk, Bowerman and American X/S are reversed and remanded for further proceedings not inconsistent with this opinion.