**In re Larry J. WICKERSHEIM and Dolores M. Wickersheim, Debtors.**

**Bankruptcy No. 88–02172.**

United States Bankruptcy Court,
E.D. Wisconsin.

Sept. 21, 1989.

Michael G. Trewin, Wausau, Wis., for debtors.

Robert F. Konkol, Stevens Point, Wis., for PCA.

Harold J. LaChapelle, Wisconsin Rapids, Wis., for FCB.

Thomas J. King, Oshkosh, Wis., Chapter 12 Trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

## INTRODUCTION

Yogi Berra, a New York Yankee legend, once remarked, "It's never over 'til it's over." That well-known quotation even appears (with some slight variation in wording) in a Court of Appeals decision. *See In re Moody*, 817 F.2d 365, 368 (5th Cir.1987). How true. When this court signed an order on March 8, 1989 confirming the debtors' chapter 12 plan of reorganization, it believed that this would bring to an end a long and bitter struggle between the debtors on the one hand and Production Credit Association of North Central Wisconsin ("PCA") and Farm Credit Bank of St. Paul ("FCB") on the other hand. Unfortunately, the rift between the parties has widened.

## FACTS

This controversy stems from a lien avoidance motion filed by the debtors on June 15, 1988, nearly 9 months before the order confirming the debtors' chapter 12 plan was signed. This motion sought to avoid the security interest of PCA in certain farm machinery, farm equipment and cattle owned by the debtors. A telephonic hearing was held on July 26, 1988 on the motion.

At the time of the hearing, much uncertainty existed among bankruptcy courts in Wisconsin with respect to the application of § 522(f) to farm machinery and equipment owned by a debtor electing the Wisconsin statutory exemptions. The Eastern District of Wisconsin applied a restrictive interpretation of § 522(f), limiting it to farm machinery and equipment of modest value and excluding capital assets. *Matter of Hintz* and *Matter of Foth*, 86 B.R. 571 (Bankr.E.D.Wis.1988) (hereinafter referred to as "*Hintz/Foth*"). The Western District of Wisconsin construed § 522(f) more broadly, declaring that it encompassed any farm machinery and equipment without any monetary ceiling, unless specified in the state exemptions. *In re Thompson*, 82 B.R. 985 (Bankr.W.D.Wis.1988). After *Thompson* was affirmed by United States District Judge Crabb on July 20, 1988, it was appealed to the Seventh Circuit. *Hintz/Foth* was also in the process of being appealed to the District Court for the Eastern District of Wisconsin when the debtors filed their lien avoidance motion.

At the July 26, 1988 telephonic hearing, the parties agreed to abide by the anticipated District Court ruling in *Hintz/Foth* on this issue. The court directed the parties to enter into a written stipulation setting forth their agreement which, together with a proposed order, was to have been filed with the court. That never took place. The proposed stipulation had been prepared and mailed by Atty Michael G. Trewin, on behalf of the debtors, to Atty Robert F. Konkol, on behalf of PCA. However, due to an inability by the parties to agree upon language in the proposed stipulation, it was never executed by PCA and never returned by Atty Konkol to Atty Trewin.

Meanwhile, a sharply contested issue developed on the feasibility of the debtors' proposed plan. Both PCA and FCB filed motions for dismissal based on lack of feasibility. An evidentiary hearing was conducted on November 3, 4 and 22, 1988. On December 16, 1988, this court found that the proposed plan was feasible and dismissed the motions of PCA and FCB.

Thereafter, the parties engaged in extensive negotiations. At a preliminary confirmation hearing held on January 31, 1989, the parties informed the court that a full resolution had been reached on all issues, thereby paving the way for confirmation of the debtors' plan. That agreement, orally recited into the record, served as the basis for the debtors' plan, which plan was then confirmed at this preliminary confirmation hearing. As a part of their agreement, FCB withdrew its pending objection to confirmation.[1] The agreement also provided for dismissal of PCA's pending adversary proceeding against the debtors for nondischargeability based upon allegations of diversion of milk proceeds. Within a few weeks after the preliminary confirmation hearing, a "Second Amended Chapter 12 Plan," setting forth the oral agreement of the parties, written stipulation and order confirming plan of reorganization dated March 8, 1989 were all filed in court. A separate order dismissing with prejudice PCA's pending adversary proceeding was also filed and entered by this court on March 3, 1989.

The confirmed plan stated that PCA held a secured claim in the amount of $51,000. The fair market value of PCA's collateral was calculated as $52,000. In recognition of their exemption, the debtors were credited with $1,000 against the $52,000, resulting in PCA's $51,000 secured claim. Neither the plan nor the written stipulation explained how the fair market value of either the collateral or the exemption was calculated. Nothing in the plan reserved to the debtors any right to pursue their lien avoidance motion. The plan required the debtors to execute new loan documents with both PCA and FCB.

On February 1, 1989, the Seventh Circuit delivered its decision in *In re Thompson*, 867 F.2d 416 (7th Cir.1989). Ironically, that occurred one day after the preliminary confirmation hearing before this court. The effect of the Seventh Circuit decision in

---

1. No objection to confirmation was filed by PCA because, unlike FCB, it had worked out its differences with the debtors before the deadline for filing objections to confirmation.

*Thompson* was to affirm the lower court in that case and to overrule the bankruptcy court in *Hintz/Foth.* On March 13, 1989, the United States District Court for the Eastern District of Wisconsin vacated the judgment in *Hintz/Foth* "for further consideration in light of *In re Gary Thompson and Randalyn Thompson,* [867 F.2d 416] (7th Cir. Feb. 1, 1989)."

On May 6, 1989, almost one year after the debtors' lien avoidance motion was filed, Atty Trewin wrote a letter to this court requesting a hearing on that motion. Atty Konkol responded that this matter was no longer an open issue in view of the confirmed plan. Atty Konkol further informed the court that the debtors never executed the loan documents with PCA and FCB which were required under the plan and asked that the debtors be directed to do so.

This correspondence prompted a telephonic hearing on May 13, 1989, by the court with Attys Trewin and Konkol. As a result of that hearing, PCA and FCB filed motions for dismissal of the case based upon an alleged material default by the debtors under the confirmed plan due to the failure to execute the loan documents. The debtors simultaneously filed a motion for modification of their plan, requesting that PCA's lien be avoided and that PCA's secured claim be reduced by the same amount by which PCA's lien is avoided.

These motions came on for hearing on August 15, 1989. Testimony was received from one of the debtors, Larry J. Wickersheim, and from Lyness Anderson, senior loan officer for Farm Credit Services, the entity which administers the loans for PCA and FCB.

### DEBTORS' MOTION TO MODIFY PLAN AND AVOID LIEN OF PCA

■ This court has reviewed the files, records and proceedings herein, including transcripts of the July 26, 1988 and January 31, 1989 hearings. It has also considered the testimony of Mr. Wickersheim and Mr. Anderson presented on August 15, 1989. It concludes that the confirmed plan clearly and unambiguously manifested a complete settlement by the parties of all pending disputes, including the lien avoidance issue. Mr. Anderson's statement at the August 15, 1989 hearing that:

"We wanted a complete plan rather than start to go, give various little items away without really knowing where we was [sic] going."

sums up the understanding of the parties.

As previously stated, the plan fixed PCA's secured claim at $51,000. The plan also structured monthly payments of $970.74 from the debtors to PCA based upon the $51,000 secured claim at 11% interest, with a balloon payment on January 1, 1993. Nowhere does the plan declare that the $51,000 secured claim is subject to an adjustment if *Hintz/Foth* is reversed by the district court. Although that was the parties' earlier understanding, if that was still the intent when the settlement was reached, the debtors would have been under a duty to place PCA on notice by specifically detailing such potential adjustment in the plan. *In re Fawcett,* 758 F.2d 588, 591 (11th Cir.1985). Atty Trewin's explanation that he was relying upon the July 26, 1988 telephonic conference, in lieu of such notification in the plan, is unpersuasive. His contention that he was "of the mistaken impression that said stipulation had been filed with the court and drafted the debtors' plan of reorganization accordingly" is incredible. Atty Trewin's letter to Atty Konkol dated July 28, 1988 stating, "If the stipulation meets with your approval, please sign *and return to my office for filing with the court*" (emphasis added) is self-explanatory. That stipulation was never signed and returned by Atty Konkol to Atty Trewin. If Atty Trewin intended to pursue this motion, he had the responsibility to bring this to the court's attention prior to confirmation. His failure to do so leads this court to conclude that, by January 31, 1989, the lien avoidance issue was "history."

The only provision calling for an adjustment in the amount of PCA's secured claim was that which was orally recited into the record on January 31, 1989 as part of the agreement. At that time, the parties in-

formed the court that the secured claim of PCA was subject to being increased from $51,000 to $59,000 "if for some reason the plan fails." *See* transcript of January 31, 1989 proceedings at p. 22, line 8.[2]

■ This court believes that the parties, who were represented by counsel, understood that the effect of their agreement, as incorporated into the debtors' plan, was to settle all existing disputes between them. Solely for the sake of argument, even if the language in the plan is ambiguous on the issue of lien avoidance, it must be construed against the debtors. It is fundamental that doubtful language is interpreted against the party drafting the language. *In re Seifert Mfg. Co., Inc.*, No. 83–04882 (Bankr.E.D.Wis., Oct. 2, 1985). This plan was prepared by the debtors. *In re Fawcett*, 758 F.2d 588, 591 (11th Cir.1985), asserts:

"... the debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them."

■ Confirmation of a plan binds both the debtor and its creditors to the plan provisions. *Matter of Grogg Farms, Inc.*, 91 B.R. 482, 485 (Bankr.N.D.Ind.1988). It is well established that an order of confirmation constitutes *res judicata* as to all issues which could have and should have been raised pertaining to the plan. *Matter of Grogg Farms, Inc.; In re Earley*, 74 B.R. 560 (Bankr.C.D.Ill.1987). A confirmed plan has binding effect because of the need for finality in determining the rights and duties of the various parties affected by the plan. *Matter of Grogg Farms, Inc.; Matter of Winterfeldt*, 28 B.R. 486, 488 (Bankr.E.D.Wis.1983); *In re Fawcett*, 758 F.2d 588 (11th Cir.1955). In *Earley*, Judge Altenberger declared:

"If this court would permit the debtor to amend the plan by relegating the secured claim of the FmHA to unsecured status,

what would prevent this Court from entertaining any issue which the FmHA might raise? Once the door is opened, the interests of justice would require that all parties be given an opportunity to be heard. That practice is prohibited by the Code and cannot be countenanced by this Court."

74 B.R. at 563.

■ A plan modification is only warranted where there is an unanticipated change in circumstances affecting implementation of the confirmed plan. During their extensive negotiations, the parties were aware of the uncertainty of the status of the issue involved in *Thompson* and *Hintz/Foth* and took this into account. The Seventh Circuit's ruling in *Thompson* was not an unanticipated change in circumstances. The validity of a settlement is not impaired by the fact that the settlement has resolved issues differently from the ruling of the court. The lien avoidance issue was only one of several issues which were settled under the plan. The fact that *Thompson* was decided by the Seventh Circuit only one day after the parties recited their agreement into the record before this court makes no difference. In all likelihood, had the debtors on January 31, 1989 evinced an intent to reserve a right to pursue the lien avoidance motion after confirmation, there would have been no settlement and no plan confirmation at that time.

■ Sometimes, in hindsight, one of the parties to an agreement may have "second thoughts" due to subsequent events. Nevertheless, it is insufficient as a basis to rescind a settlement to demonstrate that the bargain is more beneficial to one side than to the other. *Matter of North Broadway Funding Corp.*, 34 B.R. 620 (Bankr.E.D.N.Y.1983). The law favors settlement. That principle was enunciated by this court's colleagues, Judge Ihlenfeldt, in *In re Seifert Mfg. Co., Inc.*, No. 83–04882 (Bankr.E.D.Wis., Oct. 2, 1985), and Judge McGarity in *In re Bult*, No. 88–03672, 108 B.R. 207 (Bankr.E.D.Wis.1989). To permit

---

**2.** This provision is missing from the plan filed in court, either through inadvertence or for some unexplained reason.

rescission for such a reason would make a mockery of settlements and defeat their goal of finality.

After the telephonic conference of July 26, 1988, many events took place between the parties, including much hard-fought bargaining. When the settlement was ultimately arrived at, it superseded any prior inconsistent arrangements which may have existed.

■ The doctrine of equitable estoppel affords a separate basis for this court's refusal to permit the debtors to pursue lien avoidance under the circumstances here presented. In Wisconsin, equitable estoppel applies where the following elements are present:

1. Action or inaction which induces,

2. Reliance by another, and

3. To a party's detriment.

*Mercado v. Mitchell*, 83 Wis.2d 17, 26–27, 264 N.W.2d 532, 537 (1978); *Kohlenberg v. American Plumbing Supply Co.*, 82 Wis.2d 384, 396, 263 N.W.2d 496 (1978); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1214 (7th Cir.1984), cert. denied, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).

Here, the debtors failed to alert PCA, either during their negotiations or at the January 31, 1989 preliminary confirmation hearing, of any intent to preserve a right to avoid PCA's lien after confirmation. The authorities make it abundantly clear that estoppel may arise under certain circumstances from silence or inaction as well as from words or actions. 28 Am.Jur.2d, Estoppel and Waiver, § 53. *Dunn v. Pertzsch Construction Co.*, 38 Wis.2d 433, 437, 157 N.W.2d 652, 654 (1968). The debtors' inaction induced reasonable reliance by and to the detriment of PCA, causing PCA to dismiss on the merits its pending adversary proceeding against the debtors and to withdraw its objection to confirmation. In *In re Lewis*, 64 B.R. 415, 417 (Bankr.E.D. Pa.1986), aff'd *In re Lewis*, 85 B.R. 719 (E.D.Pa.1988), the court barred post-confirmation efforts to avoid a security interest under § 506 of the Bankruptcy Code when "a debtor has lulled a secured creditor into acquiescence with a plan...." That same situation is present here. The debtors' motion for modification and avoidance of PCA's lien is therefore denied.[3]

## MOTIONS OF PCA AND FCB FOR DISMISSAL

■ Both of these motions arise under § 1208(c)(6) of the Bankruptcy Code.[4] They are based upon the debtors having materially defaulted under the plan by:

1. Failing to execute new loan documents with PCA and FCB;

2. Failing to obtain the prerequisite signatures of the debtors' son and daughter-in-law, Kevin and Deborah Wickersheim, to the appropriate documents in order to effect a perfected security interest in the milk proceeds;

3. Failing to execute a bill of sale with PCA; and

4. Failing to cooperate with PCA to enable it to obtain a state court replevin judgment.

This court finds that these actions on the part of the debtors constitute cause for dismissal under § 1208(c)(6). However, an order of dismissal under § 1208(c) is discretionary and depends upon the particular circumstances involved.

Here, both the debtors and PCA have been exceedingly stubborn. Their present actions are consistent with their long-standing acrimonious relationship. The debtors

---

**3.** Atty Thomas J. King, chapter 12 trustee, has recommended denial of the debtors' motion for modification for another reason. He asserts that § 1229, while permitting a modification of a confirmed plan by scaling down payments or extending the period of time for payments, does not provide for reducing the amount of a secured claim in a confirmed chapter 12 plan. In view of this court's decision, which is predicated upon other grounds, a discussion of Atty King's contention is unnecessary.

**4.** PCA has also alleged § 1208(c)(1) as a basis for dismissal due to alleged unreasonable delay in executing the loan documents precluding PCA and FCB from obtaining a perfected security interest in the milk checks. However, the thrust of PCA's motion for dismissal rests upon § 1208(c)(6).

have refused to execute the prerequisite loan documents until PCA reduced the secured portion of its claim to the extent to which the debtors contend PCA's lien should be avoided. PCA has acknowledged that, while the debtors are entitled to some reduction in PCA's unsecured claim against them due to inaccurate accounting, it has refused to effect that adjustment until the debtors sign the prerequisite loan documents. Neither party has been willing to make the first move.

This court will provide the debtors with an opportunity to avoid a dismissal of this case by curing their defaults as enumerated above, including the execution of the appropriate documents with both PCA and FCB within 10 days after the date of this order. In the event the debtors fail to comply timely with this order, the case shall be dismissed.

This decision shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankr. Procedure.

## ORDER

On September 21, 1989, the court rendered its decision on the motion of the debtors to modify their confirmed plan and avoid the lien of Production Credit Association of North Central Wisconsin ("PCA") and on the motions of Farm Credit Bank of St. Paul f/k/a Federal Land Bank of St. Paul ("FCB") and PCA for dismissal of the above-entitled case. Accordingly,

IT IS ORDERED:

1. The debtors' motion for modification of their plan and avoidance of PCA's lien is denied.

2. PCA and FCB shall each prepare new loan documents as required under the plan. These documents, together with any other documents which PCA and FCB deem appropriate to perfect their respective security interests in collateral, including milk proceeds, shall be executed by the debtors and delivered to PCA and FCB within 10 days of their receipt by debtors. The debtors shall obtain the signatures of Kevin and Deborah Wickersheim to all appropriate documents, including milk assignments, as provided in the plan.

3. PCA shall prepare the bill of sale, as provided in the plan, which shall be executed by the debtors and delivered to Thomas J. King, chapter 12 trustee, within 10 days of receipt by debtors, to be held in accordance with the provisions of ¶ IX(11) of the plan.

4. FCB shall prepare the quit claim deed, as provided in the plan, which shall be executed by the debtors and delivered to Thomas J. King, chapter 12 trustee, within 10 days of receipt by debtors, to be held in accordance with the provisions of ¶ IX(11) of the plan.

5. Within 10 days from the date of this order, debtors shall execute any documents necessary to enable PCA to enter its state court replevin judgment against the debtors.

6. Within 10 days from the date of this order, PCA shall furnish to the debtors an itemized breakdown of the balance due to PCA on its unsecured claim.

7. Upon the debtors timely executing the aforesaid documents with PCA and FCB, obtaining the prerequisite signatures of Kevin and Deborah Wickersheim to all appropriate documents, and executing any documents necessary to PCA entering its state court replevin judgment, the motions by FCB and PCA for dismissal shall be dismissed.

8. If the debtors fail to comply with any of the foregoing provisions of this order, this case shall, upon either PCA or FCB submitting to the court an affidavit of the debtors' failure to comply, be dismissed.