**CORRUGATED PAPER PRODUCTS, INC., Plaintiff–Appellant,**

v.

**LONGVIEW FIBRE CO., Defendant–Appellee.**

No. 88–1668.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1988.

Decided Jan. 31, 1989.

R. Wyatt Mick, Jr., Bingham, Loughlin, Mick & Bent, Mishawaka, Ind., Edward J. Murphy, Notre Dame Law School, Notre Dame, Ind., for plaintiff-appellant.

Richard M. Esenberg, Foley & Lardner, Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and PELL, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiff-appellant, Corrugated Paper Products, Inc. ("Corrugated"), appeals the grant of summary judgment in favor of the defendant-appellee, Longview Fibre Company ("Longview"). Corrugated's complaint in this diversity case alleges that it is a third-party beneficiary of a contract for the sale of certain used industrial equipment entered into by Longview and Atlas Corrugated Machinery, Inc. ("Atlas"). Since we agree with the district court that Corrugated has not put forward any facts which would entitle it to third-party beneficiary status, we affirm.

I.

Corrugated and Longview are manufacturers of cardboard and other paper products. Atlas buys and sells used machinery employed in the paper products industry. During the latter part of 1983, Corrugated informed Atlas that it was interested in purchasing a used "cut-off" knife for its Mishawaka, Indiana facility. On February 17, 1984, Atlas received a letter from Longview indicating that Longview had a used cut-off knife for sale. Shortly thereafter, Atlas employee Berneice Gurley contacted Longview's Russell Reeve and indicated that Atlas was interested in purchasing the knife. During this phone conversation, Gurley told Reeve that Atlas had a prospective buyer for the equipment. According to their depositions, Reeve asked Gurley for assurances that Atlas would purchase the equipment "for its own account," whatever the outcome of Atlas' further business dealings with the (unidentified) subsequent purchaser. Gurley assured Reeve that Atlas would acquire the knife irrespective of the status of the further sale.

Between February 22 and March 30, 1984, Corrugated employees spoke directly with employees at Longview regarding the knife's technical specifications, performance and condition. On April 3, 1984, a Corrugated representative visited Longview's plant in Cedar Rapids, Iowa, to inspect the knife in operation. As a result of this visit, on April 10, 1984, Corrugated and Atlas entered into a written agreement for the purchase of the knife. Corrugated sent Atlas a deposit of $5,000 on May 1, 1984. After cashing the deposit check, Atlas sent a written purchase order for the knife to Longview on May 17, 1984, together with its own check in the amount of $5,000. The purchase order stated that the

knife would be shipped F.O.B. to Corrugated's Mishawaka plant. The purchase order also provided that the knife would be shipped "approximately June 15, 1984 upon installation of new replacement machinery." Between the Corrugated visit to Cedar Rapids and the execution of the purchase order, Gurley again assured Reeve that Atlas was purchasing the knife for itself and that the deal was not contingent on Atlas' success in reselling the equipment.

During the summer of 1984, Corrugated contacted Longview on several occasions to determine the shipping date of the equipment. Longview informed Corrugated that shipping had been delayed due to Longview's difficulties in securing satisfactory replacement machinery. On September 10, 1984, Atlas sent an amended purchase order to Longview, directing that the equipment be sent to a different buyer. Longview complied with Atlas' request.[1] On September 28, Corrugated learned from Longview employees that the knife would not be shipped to Corrugated.

On March 26, 1985, Corrugated filed suit against both Atlas and Longview, alleging breach of contract. Summary judgment was granted to Corrugated against Atlas, but this judgment is apparently uncollectible. The district court also entered summary judgment in favor of Longview, finding that Corrugated was not a third-party beneficiary of the Atlas-Longview agreement. Corrugated appeals from the summary judgment in favor of Longview.

## II.

In reviewing the district court's grant of summary judgment, we must examine the entire record to determine whether a genuine issue of material fact exists requiring a trial on the merits, construing all facts in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Scherr v. Woodland Community Consol. Dist. No. 50*, 867 F.2d 974, 981, 983 (7th Cir.1988). However, if the nonmovant bears the burden of proof on an issue, it "may not simply rest on its pleadings, but must affirmatively demonstrate, by specific factual showings, that there is a genuine issue of material fact requiring trial." *First Nat'l Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Since Corrugated bears the burden of demonstrating it is a third-party beneficiary, we must determine whether Corrugated has identified specific facts to support the contention that it is entitled to enforce the Atlas-Longview contract.

■ Under New Jersey law,[2] the intent of the contracting parties when executing the contract is the controlling factor in determining whether enforceable rights have been created in a third party. The New Jersey Supreme Court has only recently stated that

[t]he principle that determines the existence of a third party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement.

In *Brooklawn v. Brooklawn Housing Corp.*, 124 N.J.L. 73, 11 A.2d 83 (E. &

---

1. The record indicates that Longview did not receive any additional compensation due to the change in ultimate purchasers. It is unclear whether Atlas retained Corrugated's $5,000 deposit, and therefore profited indirectly from the altered resale arrangements.

2. Neither Corrugated nor Longview challenge the district court's determination that New Jersey law governs the interpretation of the Atlas-Longview contract. Brief of Plaintiff-Appellant at 5; Brief of Defendant-Appellee at 12 n. 3.

Accordingly, we will apply New Jersey law without independently examining the choice of law issue. *Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1056 (7th Cir.1988); *Mutual Service Casualty Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548, 551 (7th Cir.1988); *Schlumberger Technology Corp. v. Blaker*, 859 F.2d 512, 514 (7th Cir.1988); *Bandag, Inc. v. National Acceptance Co. of America*, 855 F.2d 491, 493 n. 1 (7th Cir.1988).

A.1940), the Court of Errors and Appeals stated the proposition:

> The determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention. [*Id.* at 76–77, 11 A.2d 83.]

The contractual intent to recognize a right to performance in the third person is the key.

*Broadway Maintenance Corp. v. Rutgers,* 90 N.J. 253, 259, 447 A.2d 906, 909 (1982); *see also Dravo Corp. v. Robert B. Kerris, Inc.,* 655 F.2d 503, 510 (3d Cir.1981) (New Jersey law); *Insulation Contracting & Supply v. Kravco, Inc.,* 209 N.J.Super. 367, 507 A.2d 754, 758 (App.Div.1986). *Cf. Holbrook v. Pitt,* 643 F.2d 1261, 1270 n. 17 (7th Cir.1981) (federal common law; "the central interpretative question involved in third-party beneficiary problems: did the contracting parties intend that the third party benefit from the contract?"); Restatement (Second) of Contracts § 302 (1981).

In determining the intent of the contracting parties, the fact that a third party is named in the contract, or that performance is to run directly to the third party, is not conclusive. For example, in the *Brooklawn* case, the court found that a municipality was not a third-party beneficiary of a real estate sales contract, even though the agreement provided that the purchaser would pay past-due real estate taxes directly to the municipality. In *Dravo Corp.,* the Third Circuit held that an equipment manufacturer could not enforce an agreement between a construction contractor and a subcontractor, despite the fact that the contract specifically provided for installation of the manufacturer's products, and the contracting parties had discussed selection of the manufacturer's equipment at length. *See also F.W. Hempel & Co., Inc. v. Metal World, Inc.,* 721 F.2d 610 (7th Cir.1983) (Illinois law; "bare mention" of third party in contract insufficient to establish third-party beneficiary status).

In other jurisdictions, courts have also been reluctant to recognize third-party rights based solely on the fact that the contracting parties were aware of the third person's relationship to the transaction. For example, courts have generally held that a third party is not a beneficiary of a sales agreement merely because both contracting parties knew that the product would be resold to the third party, or to a class of which the third party was a member. Even where the subsequent purchaser is mentioned by name in the contract, such a third party is "no more than a known remote buyer" in the absence of further evidence of an intent to benefit the third party. *Kaiser Aluminum & Chemical Corp. v. Ingersoll–Rand Co.,* 519 F.Supp. 60, 73 (S.D.Ga.1981).[3] Similarly, where a loan commitment is relied upon by persons dealing with the borrower, no third-party rights are recognized, *even if* the lender knew the identity of the third party (such as a home seller), or the lender directly communicated with the third party regarding the loan commitment.[4] And a

---

**3.** *See also, e.g., Commonwealth Propane Co. v. Petrosol Int'l, Inc.,* 818 F.2d 522, 531–32 (6th Cir.1987) (Ohio law); *Slate Printing Co. v. Metro Envelope Co.,* 532 F.Supp. 431, 433–34 (N.D.Ill. 1982); *Cullen v. BMW of North America, Inc.,* 531 F.Supp. 555, 560 (E.D.N.Y.), *rev'd on other grounds,* 691 F.2d 1097 (2d Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *Wheeling Trust & Savings Bank v. Tremco Inc.,* 153 Ill.App.3d 136, 140–41, 106 Ill.Dec. 254, 257–58, 505 N.E.2d 1045, 1048–49 (1st Dist.1987); *Spiegel v. Sharp Electronics Corp.,* 125 Ill.App.3d 897, 903, 81 Ill.Dec. 238, 243, 466 N.E.2d 1040, 1045 (1st Dist.1984)

("mere knowledge of resale to third parties is [not] sufficient to create third-party beneficiary status"); *Altevogt v. Brinkoetter,* 85 Ill.2d 44, 56, 51 Ill.Dec. 674, 421 N.E.2d 182, 188 (1981).

**4.** *See, e.g., Braten v. Bankers Trust Co.,* 60 N.Y.2d 155, 468 N.Y.S.2d 861, 865, 456 N.E.2d 802, 806 (1983) (lender's agreement to extend credit to failing business did not create third-party rights in business' suppliers, even if lender directly communicated arrangement to suppliers, and suppliers relied on agreement to "gear up" their facilities to continue to supply business); *Khabbaz v. Swartz,* 319 N.W.2d 279, 284–

property owner is generally not a third-party beneficiary of an agreement between a general construction contractor and a subcontractor, even though both contractor and sub knew that benefits were to be directly conferred on the property owner.[5]

As these decisions indicate, there is an important difference between *knowledge* that a certain outcome will occur, and an *intent* to bring about that result. In order to establish third-party beneficiary status, a plaintiff must show more than that the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement. The plaintiff must show that the benefit to plaintiff was a consequence which the parties affirmatively sought; in other words, the benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter into the contract.

This court discussed the distinction between knowledge of consequences and an intent to produce those consequences in a recent decision in which plaintiff alleged that the City of Chicago had operated O'Hare Airport in a manner *intended* to inflict noise pollution on surrounding landowners. As Judge Easterbrook explained, we must

distinguish[ ] knowledge from intent, byproduct from objective. A state may know what its laws do, yet may not "intend" all of the consequences. Some of them may be unwelcome fallout from activities undertaken for another reason. The essential question … [is] whether the state acted "at least in part 'because of,' not merely 'in spite of,' [the] adverse effects upon an identifiable group."

Chicago intends to operate O'Hare Airport, knowing that noise and pollution occur. But it does not operate O'Hare because this is the best way to create noise and fumes. These are unwelcome byproducts. A good way to put the intent question is: "If the consequence at issue were smaller, or its effect were reversed, would the actor find the activity less attractive?" If planes made less noise, would Chicago curtail the size and hours of operation at O'Hare? To put the question this way is to show that [plaintiff] cannot establish intent.

*Bieneman v. City of Chicago,* 864 F.2d 463, 467 (7th Cir.1988) (citation omitted).

■ The same reasoning applies here. Even disregarding, for the moment, the deposition testimony of Gurley and Reeve regarding the substance of their telephone conversations, Corrugated has come forward with *no* evidence which might suggest that *both* Longview and Atlas intended, *at the time of entering their contract,* to confer a benefit on Corrugated. All we know is that Corrugated's Mishawaka facility was listed as the delivery location, and that Longview was aware that Atlas was purchasing the equipment for resale. However, there is no evidence to suggest that Longview intended to assume Atlas' contractual obligations to Corrugated. Instead, the evidence indicates that direct delivery to a subsequent purchaser is an industry-wide practice used primarily as a cost-saving device. Therefore, it appears that Longview agreed to ship directly to Corrugated as an accommodation to Atlas rather than to become entwined in contractual relations with a company with which it had no prior dealings.

The direct communications between Corrugated and Longview do not mandate a different result. The communications prior to the Atlas–Longview contract, and the visit of a Corrugated employee to view the knife at Longview's plant, were once again merely an accommodation by Longview. These communications did not in any way alter the substance of the Atlas–Longview

---

86 (Iowa 1982) (loan commitment between home buyer and bank creates no rights in home seller); *Dale v. Groebe & Co.,* 103 Ill.App.3d 649, 653, 59 Ill.Dec. 350, 354, 431 N.E.2d 1107, 1111 (1st Dist.1981) (seller not third-party beneficiary of loan commitment between lender and home buyer, even though seller relied on lender's confirmation of loan commitment to enter into a further home purchase contract); *see also* An-

not., *Vendor's Action Against Vendee's Prospective Lender for Misrepresentation Respecting or Failure to Complete Loan Commitment,* 30 A.L. R. 4th 474 (1984).

5. *See, e.g., Hixon v. Sherwin–Williams Co.,* 671 F.2d 1005, 1010 (7th Cir.1982) (Indiana law).

agreement—Longview was clearly *not* specially designing or manufacturing a product or service to meet Corrugated's specifications. Such communications are very similar to communications between a mortgage lender and a home seller prior to the execution of a loan commitment between lender and prospective purchaser—while the lender may inform the seller of the progress of the transaction, or of the conditions under which financing is to be granted, the seller is *not* a third "party" to the financing agreement.

 Corrugated also makes much of the fact that, after the Atlas–Longview contract had been executed, it engaged in "negotiations" with Longview which resulted in "contract modifications" regarding the knife's delivery date. However, the Atlas–Longview purchase order specifically provided for "shipping approximately June 15, 1984 upon installation of new replacement machinery." When the installation of Longview's replacement equipment was delayed, there was simply no need for Longview to "modify" the agreement in any way. All that can be said of these later communications is that, when Corrugated employees called to inquire, Longview officials informed them of the progress of the Atlas–Longview sale agreement. Such provision of information is insufficient to create third-party beneficiary rights, especially where the communications occurred *after* execution of the contract, and are therefore virtually irrelevant to the parties' intent at the time the contract was executed. *F.W. Hempel & Co., Inc. v. Metal World, Inc.*, 721 F.2d 610, 614 & n. 7 (7th Cir.1983) (Illinois law; intent must be determined at time of contract formation; subsequent communications between promisor and third party irrelevant to third-party beneficiary analysis).

Corrugated has simply failed to come forward with the sort of evidence relied upon in decisions which have found that a third party was an intended beneficiary of a contract. In some of these cases, the promisor specially designed its product for the third party's use, or discussed the selection of an appropriate product with the third party. *See, e.g., Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1982); *Acme Brick Co. v. Hamilton*, 218 Ark. 742, 238 S.W.2d 658, 660–61 (1951). In other cases, the contract negotiations revealed that the promisee explicitly informed the promisor that it was entering the transaction "on behalf of," or "for the purpose of" benefiting, the third party. *See, e.g., Holbrook v. Pitt*, 643 F.2d 1261, 1271–73 (7th Cir.1981); *Mercado v. Mitchell*, 83 Wis.2d 17, 28–29, 264 N.W.2d 532, 538 (1978). In a third group of cases the contract itself established a comprehensive set of rights and obligations between the promisor and third party. *See, e.g., Sears, Roebuck & Co. v. Jardel Co.*, 421 F.2d 1048, 1054 (3d Cir.1970) (Pennsylvania law); *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 336 A.2d 211, 215–16 (Del.1975). The present situation is a far cry from cases in which a legally enforceable third-party beneficiary relationship has been found to exist.

### III.

Besides the evidence discussed above, Longview also offered deposition testimony of its own employee, Russell Reeve, and two Atlas employees, Berneice Gurley and Steven Frangedis, in support of its motion for summary judgment. Gurley and Reeve testified that on two occasions Reeve asked for, and received, assurances that Atlas was dealing for itself in the purchase transaction, and that Atlas' purchase of the cut-off knife was not contingent on the success of the resale transaction. The deposition testimony of Gurley and Frangedis contains categorical assertions that it had *not* been Atlas' intent to benefit Corrugated when entering into the purchase transaction. If credited, this testimony alone would seem to dispose of Corrugated's contention that it is a third-party beneficiary of the Atlas–Longview contract. However, this evidence relates to the contracting parties' state of mind, was solely in the control of Longview and a party presumably allied in interest with it and might have been disbelieved by a jury in its evaluation of credibility. It is therefore not immediately

clear whether this evidence in itself may serve as a basis for summary judgment.

■ Certainly, in cases where the defendant's motive or state of mind is an essential element of a plaintiff's case, a court must be circumspect in granting summary judgment based solely on the defendant's categorical denial that the requisite mental state existed. *See Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) ("When the issue is one of intent, we approach the application of [summary judgment] principles with special caution."). However, where the plaintiff has had the opportunity to depose the defendant to test the defendant's veracity and the plaintiff has failed to "shake" the defendant's version of the facts or to raise significant issues of credibility, summary judgment for the defendant may ordinarily be granted. This is the case unless the plaintiff has adduced other "significant probative evidence" from which a jury would be entitled to infer contrary conclusions about the mental state at issue.

■ It is well-settled that summary judgment may be granted where the controlling issue is whether or not the movant acted with a particular mental state. Although the movant's testimony about the existence of a particular mental state may

not be dispositive, the movant is entitled to summary judgment if the burden is on the nonmovant to establish the state of mind and the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably infer the relevant state of mind.[6]

■ As noted, Corrugated has failed to present any evidence which would contradict the deposition testimony of Gurley, Frangedis and Reeve that Atlas and Longview did not intend to benefit Corrugated when they formed their agreement. Therefore the deponents' statements would be entitled to conclusive weight unless Corrugated can show that their credibility is subject to attack. Where, as here, the movant's witnesses have been examined by the nonmovant in depositions, the nonmovant ordinarily must identify specific factual inconsistencies in the witness' testimony in order to withstand a motion for summary judgment. "[T]he opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Curl v. International Business Mach. Corp.,* 517 F.2d 212, 214 (5th Cir. 1975) (quoting *Rinieri v. Scanlon,* 254 F.Supp. 469, 474 (S.D.N.Y.1966)).[7]

**6.** *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Beard v. Whitley County,* 840 F.2d at 410 ("even when such issues of motive or intent are at stake, summary judgment is proper where the plaintiff presents no indication of motive or intent supportive of his position.") (citations omitted); *National Union Fire Ins. Co. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir.1983) (in general, issues of contractual intent not subject to summary disposition; however summary judgment appropriate where nonmovant has failed to produce "at least some evidentiary support for [a] competing interpretation[ ] of the contract's language."); *Weit v. Continental Illinois Nat'l Bank & Trust Co.,* 641 F.2d 457, 464 (7th Cir.1981) (summary judgment appropriate where extensive discovery has failed to uncover even circumstantial evidence of illicit motive); *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1220 (9th Cir.1980); *Morrison v. Nissan Co., Ltd.,* 601 F.2d 139 (4th Cir.1979) (summary judgment inappropriate where, despite defendant's denial of intent to fix prices, plaintiff produced significant circumstantial evidence from which inference of illicit motive could be drawn); *Conrad v. Delta Air Lines, Inc.,* 494

F.2d 914, 918 (7th Cir.1974) ("If improper motive could reasonably be inferred from facts before the court, sworn denials of such intentions do not remove the issue from the case so as to entitle the party to summary judgment."); *Washington Post Co. v. Keogh,* 365 F.2d 965, 969 (D.C.Cir.1966); Sonenshein, *State of Mind and Credibility in the Summary Judgment Context: A Better Approach,* 78 NW.U.L.Rev. 774, 786–87 & n. 49 (1983) (state of mind issues should be treated like any other factual issue for summary judgment purposes; Federal Rules, unlike state counterparts, fail to exempt state of mind issues from normal summary judgment practice).

Where the burden of proof is on the movant with respect to state of mind or another issue as to which evidence is in the movant's exclusive control, the standards for a grant of summary judgment may differ. *See Wilmington Trust Co. v. Manufacturers Life Ins. Co.,* 624 F.2d 707, 709 (5th Cir.1980).

**7.** *See also Strickland v. Watt,* 453 F.2d 393, 394 (9th Cir.1972) (per curiam) (fact that affiant a convicted felon insufficient to preclude summary judgment, where appellants had not contra-

Judge Learned Hand discussed the appropriateness of summary judgment where all evidence is in the possession of the movant's witnesses in *Radio City Music Hall Corp. v. United States,* 135 F.2d 715 (2d Cir.1943), which involved the question whether certain performers who appeared at Radio City were its employees for tax purposes. All the evidence regarding the relationship of these performers to the management of the theater was in the hands of Radio City personnel; the government resisted summary judgment on the ground that it should have the chance to test the credibility of these witnesses before a jury. Judge Hand emphatically disagreed:

> Since [the government] is forced to draw all its evidence from the plaintiff's own officers, or from other actors, is it not unfair to make this one-sided presentation final? There would be much force in this, if the motion had been heard merely upon affidavits; the right to cross-examine [Radio City's manager] and the actors was almost the [government's] only protection. But it did fully cross-examine them [at depositions], and did not shake their testimony; and, although if it wished, it might challenge [Radio City's manager's] good faith, before a jury, it does not suggest that he was fabricating.... [The government] says that, given time, it may find that some of these were "employees," and that we should not take away its chance of doing so. That does not make a "genuine issue," Rule 56(c), or a "substantial controversy," Rule 56(d). When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result.

*Id.* at 718 (citation omitted); *see also Dyer v. MacDougall,* 201 F.2d 265, 268–69 (2d Cir.1952) (L. Hand, J.); *Arnstein v. Porter,* 154 F.2d 464, 478–79 (2d Cir.1946) (Clark, J., dissenting).

■ In the present case, Corrugated has not come forward with any evidence which would suggest that Gurley, Frangedis and Reeve are not credible witnesses; nor has it identified any inconsistencies in the deponents' accounts of the transaction. The opportunity to cross-examine these witnesses at trial would presumably add nothing to the deposition testimony already elicited. Therefore, it was appropriate for the district court to consider their testimony in ruling on the motion for summary judgment. As previously indicated, this testimony clearly demonstrates that Longview did not desire to become involved in contractual relations with a third party. Therefore, Corrugated's claim of entitlement to third-party beneficiary status must fail.

## IV.

Considering the entire record in the light most favorable to Corrugated, it is clear that Longview and Atlas did not intend to confer enforceable third-party beneficiary rights on Corrugated when entering into their purchase contract. Therefore, Long-

dicted any facts asserted in affidavit); *Eisbach v. Jo–Carroll Elec. Co-op., Inc.,* 440 F.2d 1171, 1174 (7th Cir.1971); *Lavine v. Shapiro,* 257 F.2d 14, 19 (7th Cir.1958) (mere "anemic hope" that information contradicting deposition testimony would be elicited under cross-examination at trial insufficient to withstand motion for summary judgment); *Sterling Nat'l Bank & Trust Co. v. Federated Dep't Stores, Inc.,* 612 F.Supp. 144, 146 (S.D.N.Y.1985); *Vantage Point, Inc. v. Parker Bros., Inc.,* 529 F.Supp. 1204, 1213–14 (E.D. N.Y.1981), *aff'd mem.,* 697 F.2d 301 (2d Cir. 1982); *Carroll v. United Steelworkers of Am.,* 498 F.Supp. 976, 978 (D.Md.1980); *United States v. Canellis,* 490 F.Supp. 1125, 1128 (N.D.Ill. 1980); Sonenshein, *State of Mind and Credibili-*

*ty in the Summary Judgment Context: A Better Approach,* 78 NW.U.L.Rev. 774, 798 (1983) (denying summary judgment whenever witness' demeanor could be tested at trial "is plainly wrong, and would emasculate Rule 56 by precluding summary judgment in all cases except perhaps those in which the proof is documentary."); 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2726, at 119 (2d ed. 1983) ("specific facts must be produced in order to put credibility in issue so as to preclude summary judgment. Unsupported allegations that credibility is in issue will not suffice.") (footnotes omitted); *see also* 6 Moore & Wicker, *Moore's Federal Practice* ¶ 56.15[4], at 56–298 to –299 (2d ed. 1988).

view was entitled to summary judgment. The judgment of the district court is

AFFIRMED.