Lynne A. SCHWARTZ, Plaintiff,

v.

SYSTEM SOFTWARE ASSOCIATES, INC., Roger E. Covey, and David L. Harbert, Defendant.

No. 91 C 1154.

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1993.

Ronald L. Futterman, Steven P. Schneck, Futterman & Howard, Chtd., Chicago, IL, I. Stephen Rabin, Joseph P. Garland, Law Offices of I. Stephen Rabin, New York City, for Lynne A. Schwartz.

Joel S. Feldman, Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, IL, for System Software Associates, Inc., Roger E. Covey, David L. Harbert.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case comes before the court on Defendants' motion for summary judgment. Defendants argue that Plaintiff has not put forth any evidence to support her claim of "fraud on the market," and that merely asserting that the Defendants' affidavits are not credible is insufficient to withstand a summary judgment motion. Plaintiff, in turn, asserts that the Defendants' own written internal profit forecasts demon-

strate that the public announcement at issue here was deliberately false and misleading. For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part. Furthermore, the court *sua sponte* dismisses Plaintiff's common law fraud claim.

## BACKGROUND

Defendant System Software Associates, Inc. ("SSA") develops and sells computer software to companies around the world. Its common stock is publicly traded on the NASDAQ National Market System, where it is followed and rated by a number of different security analysts.[1]

In November of 1990, SSA adopted a budget for fiscal year 1991 in which it set earnings goals of $.39/share in the first quarter and $2.55 for the entire fiscal year. On numerous occasions during the first quarter of fiscal 1991 (November 1, 1990–January 31, 1991), Defendant Covey, SSA president and chairman of the board, prepared computerized profit "forecasts" for both the quarter and year. SSA acknowledges that such forecasts were prepared on 1/2/91, 1/26/91, 1/27/91, and 1/28/91. While SSA asserts that these forecasts were strictly for internal usage, Plaintiff astutely notes that SSA must have been relying on some forecast when it advised the market about SSA's earnings estimates.[2]

According to SSA, the "forecasts" prepared on 1/2/91 and 1/27/91 were not really forecasts, but rather "what if simulations" based upon hypothetical assumptions about revenues and expenses. In contrast, the "forecasts" prepared on 1/26/91 and 1/28/91 are purported by SSA to be predictions of actual quarterly and annual results. Although Covey's affidavit supports SSA's distinction between the purported "simulations" and the purported

"real forecasts", Plaintiff notes that the "simulations" are not labelled "simulations." Rather, like the purported "real forecasts," the "simulations" are labelled "forecast" and have the same format as the "real forecasts". Furthermore, the simulations were prepared using sales numbers from the field (as were the "real forecasts"), and were distributed in the same manner as the "real forecasts". In fact, the 1/2/91 "simulation" was prepared based upon the 12/28/90 best estimates of "most likely" sales figures from the field.

The alleged distinction between the "real forecasts" and the "simulations" is important because of the different profit predictions contained in these forecasts. The 1/2/91 and 1/27/91 "simulations" predicted first quarter profits of $0.25 and $0.29 per share respectively; the 1/26/91 and 1/28/91 "real forecasts" predicted first quarter profits of $0.34 and $0.35 per share respectively.

On January 14, 1991, Scott Smith, a stock analyst at Donaldson, Lufkin & Jenrette who followed SSA, downgraded his rating of SSA's common stock from "neutral" to "unattractive." After Smith's downgrade, the trading price of SSA's common stock on January 14, 1991 dropped from its opening price of 28 to a closing price of 26½.

As a result, a Dow Jones reporter called Defendant Harbert, who was then SSA's chief financial officer, to inquire about the stock price decline. Based upon that telephone conversation, an article appeared on the Dow Jones news wire on January 14, 1991, in which it was reported that "Harbert says there isn't any internal development to account for the stock's decline." Furthermore, reported the article, "Harbert says the company is comfortable with the middle of the Street range of fiscal 1991 earnings estimates, which he places at

---

1. Plaintiff Lynne A. Schwartz is the sole named plaintiff in this class action. The certified class consists of persons (not including Defendants) who purchased SSA common stock between the "January 14, 1991 statement" (discussed hereinafter) and the announcement of SSA first quarter results on February 19, 1991.

2. Plaintiff asserts that Covey also prepared "forecasts" on 12/10/90 and 12/20/90, but Defendants point out that "[t]here has been no testimony in this case which identifies or describes the December 10 and 20, 1990 documents." D. Reply to 12(n) Statement at ¶ 7. Without such a foundation, the court will not consider these additional forecasts.

about $1.85 to $1.90 a share. He notes estimates range from $1.70 to about $2 a share." (Dow Jones Article dated January 14, 1991). This announcement halted the drop in the stock price and was a prelude to a sharp climb in the weeks that followed.

At the time Harbert made his statement to the Dow Jones reporter, he was aware of all key developments within SSA relating to SSA's outlook for the fiscal year 1991 and its first quarter as a result of his position at SSA.

On February 19, 1991, SSA released its results for the first quarter of fiscal 1991—earnings per share of $.31. This figure included a $0.09 per share non-recurring item attributable to a change in SSA's commission structure. The actual earnings per share were therefore $.22, only slightly below the $.25/share predicted in the 1/2/91 "simulation", but significantly below the purported "real forecast" on 1/26/91 and 1/28/91. SSA adopted the change in commission structure on January 4, 1991, but the impact of the change was not calculated until just before SSA's quarterly results were released on February 19, 1991. In that quarterly report, SSA also stated that it expected to have a weak second quarter. SSA's stock plunged 30% in two days after the release of these results.

Plaintiff subsequently brought this action in which she argues that while Harbert's January 14 statements had the desired effect (stopping the January 14, 1991 price drop), they ultimately defrauded persons who purchased SSA stock between January 14, 1991 and February 19, 1991. In particular, Plaintiff alleges as follows:

"Each Defendant knew or recklessly disregarded the fact that the acts and practices, misleading statements, and omissions particularized herein would adversely affect the integrity of the market of System Software common stock, and artificially inflate the price of such securities ... Defendants Covey and Harbert ... by reason of their management positions and, as to Defendant Covey, his

ownership of a sizeable number of shares in System Software and chairmanship of the System Software Board, reviewed and approved the Company's public statements set forth herein."

Comp. at ¶ 11–12.[3]

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure requires this court to enter summary judgment on Defendant's motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court must review the record and draw all inferences from it in the light most favorable to the non-movant. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

### I. *The federal securities laws claims.*

Under *Virginia Bankshares, Inc. v. Sandberg,* — U.S. —, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) and *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509 (7th Cir.1989), Plaintiff must establish three key facts to prevail on her Rule 10(b)(5) securities fraud claim: 1) that some fact in Harbert's statement was false; 2) that Harbert himself did not believe the statement; and 3) that the statement had no reasonable basis. Defendants assert that "[t]he plaintiff has not—and cannot—make a credible showing of a genuine dispute as to any of these key facts", D.Mem. at 2–3, and have submitted affidavits and deposition transcripts in support of their

---

3. Because Defendants filed the instant summary judgment motion while their motion to dismiss was still pending, the court deems Defendants'

pending motion to dismiss superseded and withdrawn.

position. Furthermore, Defendants point out that:

> [W]here the plaintiff has had the opportunity to depose the defendant to test the defendant's veracity and the plaintiff has failed to 'shake' the defendant's version of the facts or to raise significant issues of credibility, summary judgment for the defendant may ordinarily be granted.

*Corrugated Paper Products, Inc. v. Longview Fibre Co.,* 868 F.2d 908, 914 (7th Cir.1989). In other words, the Plaintiff cannot survive summary judgment by casting "some metaphysical doubt as to the material facts." *Baker v. Elmwood Distributing, Inc.,* 940 F.2d 1013, 1017 (7th Cir.1991), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Nevertheless, summary judgment is not appropriate if the plaintiff produces "other 'significant probative evidence' from which a jury would be entitled to infer contrary conclusions about the mental state at issue." *Corrugated Paper Products,* 868 F.2d at 914.

> Although the movant's testimony about the existence of a particular mental state may not be dispositive, the movant is entitled to summary judgment if the burden is on the nonmovant to establish the state of mind and the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably infer the relevant state of mind.

*Id.*

The relevant inquiry in the case at bar is therefore whether the Plaintiff has come forward with at least circumstantial evidence from which a jury could reasonably infer that a false statement without a reasonable basis was made knowingly or recklessly. In an attempt to do so, Plaintiff relies heavily on the January 2, 1991 document labelled "forecast" which Defendant merely asserts was a "what if simulation." In particular, Plaintiff stresses that

> [t]here is an equal likelihood that a document called a Forecast, prepared like a

Forecast, and containing Forecast information is a Forecast. At least, a jury could find it to be so. Whether certain Forecasts are "real" Forecasts or only simulations is an issue that ... must be decided by a jury after hearing, seeing, and examining all the evidence.

P.Response at 10. The court agrees. There are *no* forecasts supporting Defendants before the January 14, 1991 announcement. Accordingly, a jury could reasonably conclude, based upon the January 2, 1991 forecast, that Harbert's January 14 statement was a knowing or reckless misstatement of two facts: first, that there were no internal developments to explain the stock's drop; and second, that SSA was comfortable with the mid-range estimate of earnings for the year. Furthermore, a jury could also reasonably conclude both that Harbert's statement was false when made, and that there was no reasonable basis for it. Defendant's motion for summary judgment on the federal securities laws claims is therefore denied.

## II. *Negligent misrepresentation.*

To maintain an action for negligent misrepresentation under Illinois law, Plaintiff must show that SSA is in the business of supplying information for the guidance of others in their business transactions. *Rankow v. First Chicago Corp.,* 870 F.2d 356, 362 (7th Cir.1989). Courts have consistently held that companies like SSA, whose primary function is to develop and market computer software, cannot be liable under a theory of negligent misrepresentation because they do not meet the requirement of being in the business of supplying information. *See, e.g., In re Information Resources, Inc. Sec. Litig.,* 1990 WL 37769, 1990 U.S.Dist. LEXIS 2652 (N.D.Ill. March 9, 1990) (negligent misrepresentation claim dismissed because defendant's principal function was to design, develop and maintain computer-based systems, not to "provide information that others would rely upon in their business transaction with third parties"); *Black, Jackson & Simmons Ins. Brokerage, Inc. v. International Business Machines Corp.,* 109 Ill.App.3d 132, 136, 64 Ill.Dec. 730, 440

**1368**

N.E.2d 282 (1st Dist.1982) (negligent misrepresentation claim dismissed because a computer systems manufacturer that sold computer and software equipment was not in the business of supplying information).

Plaintiff does not contend that SSA is in the business of supplying information. Moreover, Plaintiff does not even mention her negligent misrepresentation claim in her responsive brief. Accordingly, the court hereby grants summary judgment on Plaintiff's negligent misrepresentation claim.

III. *Common law fraud.*

■ To support her Illinois common law fraud claim, Plaintiff urges this court to apply fraud-on-the-market theory. Plaintiff concedes, however, that no court has ever addressed the question of whether fraud-on-the-market theory may be invoked as a substitute for actual reliance under Illinois law.

Pursuant to 28 U.S.C. § 1367(c)(1), this court may decline to exercise supplemental jurisdiction over a state law claim if it raises "a novel or complex issue of State law." Although abstention doctrines are not lightly invoked by this court, the court believes that this issue is a novel question best addressed by a state court. Accordingly, the court declines to exercise supplemental jurisdiction over it, and hereby *sua sponte* dismisses Plaintiff's common law fraud claim. *See, e.g., Bonilla v. City Council of Chicago*, 809 F.Supp. 590 (N.D.Ill.1992) (novel question of Illinois election law); *Hernet v. Unknown Cook County Jail Guards*, 1992 WL 249644, 1992 U.S.Dist. LEXIS 14563 (N.D.Ill. September 25, 1992) (novel question of Illinois tort law).[4]

### CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment on the federal securities law claims is denied.

Defendants' motion for summary judgment on the negligent misrepresentation claim is granted, and the court *sua sponte* dismisses Plaintiff's common law fraud claim.

---

**4.** The court could also abstain from deciding this issue under common law abstention doctrines. *See, e.g., Property and Casualty Ins., Ltd. v. Central Nat. Ins. Co.*, 936 F.2d 319, 322 (7th Cir.1991) (*Burford* abstention allows the federal court to "abstain from deciding difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the present case").