# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# W05-616

SHANNON CLEMENT

VERSUS

DUSTY J. REEVES, ET AL

***CONSOLIDATED WITH***

JESSICA VIDRINE

VERSUS

LAFAYETTE PARISH CONSOLIDATED
GOVERNMENT, ET AL

***CONSOLIDATED WITH***

CHRISTINA CHAU

VERSUS

DUSTY J. REEVES, ET AL

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-1906 C/W 2003-3716 and 2003-6576
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, Glenn
B. Gremillion, Billy Howard Ezell, and J. David Painter, Judges.

**WRIT DENIED.**

**D. Keith Wall**
**Marcantel, Marcantel, Wall, Pfeiffer & Stretcher**
**P. O. Box 1366**
**Jennings, LA 70546**
**(337) 824-7380**
**Counsel for Plaintiff/Respondent:**
    **Shannon Clement**

**G. Frederick Seemann**
**401 Audubon, Suite 103A**
**Lafayette, LA 70503**
**(337) 234-3766**
**Counsel for Plaintiff/Respondent:**
    **Jessica Vidrine**

**Patrick B. McIntire**
**Robin L. Jones**
**Oats & Hudson**
**100 E. Vermilion St., #400**
**Lafayette, LA 70502**
**(337) 233-1100**
**Counsel for Defendant/Applicant:**
    **Lafayette City Parish Consolidated Government**

**Cary B. Bryson**
**Bryson Law Firm**
**217 W. University Avenue**
**Lafayette, LA 70506**
**(337) 233-4210**
**Counsel for Plaintiff/Respondent:**
    **Christina Chau**

GREMILLION, Judge.

This matter is on remand from the Louisiana Supreme Court for briefing, argument, and opinion. We originally granted writs in favor of the defendant-relator, Lafayette City-Parish Consolidated Government (LCG), finding that the trial court erred in denying summary judgment in its favor as no genuine issue of material fact existed with regard to the knowledge element in the plaintiffs' claims against it. Thereafter, the plaintiffs sought supervisory writs from the supreme court, which granted the writs and remanded the matter to us. For the following reasons, we deny the writ finding that a genuine issue of material fact exists, making summary judgment improper.

**FACTS**

This litigation stems from a December 20, 2002 automobile accident, which occurred in the 7200 block of Landry Road, located in a rural area of Lafayette Parish, at approximately 10:45 p.m. Shannon Clement, Jessie Vidrine, and Christina Chau were passengers in a truck driven by Dusty Reeves. Reeves, who was unfamiliar with Landry Road, lost control of his vehicle and crashed into a ditch when he failed to safely negotiate a ninety-degree turn. As a result, Clement, Vidrine, and Chau (plaintiffs) filed suit against LCG alleging that it failed to maintain the advance turn warning sign which would have warned Reeves of the approaching turn. These three suits were consolidated by the trial court. (Docket Number 2003-1906, consolidated with Docket Numbers 2003-3716 and 2003-6576).

In response, LCG sought summary judgment arguing that the plaintiffs could not prove that it had constructive notice of the downed sign prior to the

1

accident or that it had a reasonable amount of time in which to repair the sign. It further argued that it was immune from liability under the Louisiana Homeland Security and Emergency Assistance and Disaster Act, as a state of emergency had been declared for the State of Louisiana and Lafayette Parish on October 1, 2002, in anticipation of Hurricane Lili. This state of emergency was extended statewide for an additional forty-five days by Governor Mike Foster on October 31, 2002.

Following argument, the trial court denied LCG's motion finding "too many loose facts floating around to be amenable to summary judgment at present." A judgment denying the motion was rendered on April 21, 2005. Based on the trial court's judgment, LCG sought and was granted supervisory writs from this court. A five judge panel granted the writ and made it peremptory using the following language:

> We find that the trial court erred in its determination that there were genuine issues of material fact as to the knowledge element of the claim against the defendant-relator, Lafayette City-Parish Consolidated Government (LCG). The testimony offered by LCG was sufficient to shift the burden of proof to the plaintiffs-respondents, Shannon Clement, Jessica Vidrine, and Christina Chau. Clement provided one statement made by Terry Rabon, an LCG department of transportation employee, that could be construed as inconsistent with Rabon's other testimony that the sign was up and visible at the time of the survey. No other factual support was provided by the plaintiffs. The one seemingly inconsistent statement by Rabon on which plaintiffs rely, falls well short of the showing of factual support required to avoid summary judgment. Accordingly, summary judgment is hereby granted and all claims against LCG are dismissed, with prejudice, at plaintiffs' cost.

See unpublished writ Clement v. Reeves, 05-616 (La.App. 3 Cir. 8/19/05) (Thibodeaux, C.J., and Ezell, J., dissenting). Thereafter, the plaintiffs sought and were granted supervisory writs from the supreme court, with the matter being remanded to this court for briefing, argument, and opinion. See Clement v. Reeves,

2

05-2475, 05-2479, 05-2481(La. 3/31/06), 925 So.2d 1249, 1250.

## ISSUES

LCG argues that the trial court erred denying its motion for summary judgment as the plaintiffs failed to present any evidence that it had constructive knowledge of the downed warning sign prior to the accident. It further argues that the trial court erred in refusing to recognize its immunity from civil liability as a result of the state of emergency declared in the advance of Hurricane Lili.

## SUMMARY JUDGMENT

The law pertaining to summary judgment was discussed by the Louisiana Supreme Court in its per curiam opinion in *Hines v. Garrett*, 04-0806, pp. 1-2 (La. 6/25/04), 876 So.2d 764, 765-66 (alteration in original):

> We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.
>
> A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730,751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*
>
> Louisiana Code of Civil Procedure art. 966(C)(2) provides:
>
> (2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion

3

for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, motion, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Here, the plaintiffs will bear the burden of proof at trial; thus, LCG is only required to point out that there is a lack of factual support for one or more elements essential to their claim.

**NOTICE**

The plaintiffs claim that LCG failed to maintain the advanced turn warning sign which led to Reeves' failure to negotiate the ninety-degree turn and resulted in the crash. The parties do not contest that LCG is responsible for the sign in question, as well as the road on which the accident occurred. Louisiana Civil Code Article 2317 imposes strict liability on the custodian of a defective thing that causes injury to another. To prevail in an action alleging liability under this article, the plaintiff bears the burden of proving: (1) the property that caused the damage was in the "custody" or "garde" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to the person on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *Cross v. Timber Trails Apartments*, 04-1623 (La.App. 3 Cir. 4/6/05), 899 So.2d 853.

In cases brought against public entities alleging liability pursuant to Article 2317, an additional requirement is appended to the knowledge element. In

4

these actions, the plaintiff has the burden of proving that the public entity had actual or constructive knowledge of the defect, was afforded a reasonable opportunity to repair it, and failed to do so. La.R.S. 9:2800(C). Louisiana Revised Statute 9:2800(D) defines "constructive notice" as "the existence of facts that infer actual knowledge."

LCG argues that there is an absence of factual support for the essential element, that it had actual or constructive notice of the downed sign, was afforded a reasonable time to repair it, and failed to do so. In support of this contention, LCG offers the deposition testimony of Terry Rabon, the department of transportation employee who inspected the sign on October 30, 2002. In his testimony, Rabon testified that he had no independent recollection of the sign in question. However, he also testified that the sign in question was slightly leaning and in need of repair, but still visible and functioning to motorists. Rabon made this determination by inspecting the work order he filled out on the sign in question.

Rabon explained that sign crews are called in when a sign is down and not visible to passing motorist, and is replaced that day. In those instances, he stated that a work order is not filled out. Had the sign been down when he surveyed it, he stated that he would have called the sign crew to replace it that day. Work order 54117 reveals that Rabon surveyed the 7200 block of Landry Road on October 30, 2002. With regard to the subject advance turn warning sign, all that the report shows is that it was to be reinstalled.

In addition to Rabon's deposition testimony, LCG provided depositions and affidavits of other LCG employees. Jeanella Batiste, the Traffic Services

5

Coordinator for LCG's Department of Transportation, affirmed that she reviewed the records of her office and found no complaint of a downed sign in the 7200 block of Landry Road. She stated that the first notice her office had of the downed sign was on January 13, 2003, when Johnny Sonnier, a foreman in the Traffic Services Department, resurveyed the road. Sonnier testified that prior to his resurvey of the road, his department had no notice that the advance turn warning sign was down.

The information provided by LCG is sufficient to make a prima facie showing of an absence of factual support for the essential notice element. Accordingly, the burden of proof is shifted the plaintiffs to show that summary judgment is not appropriate. To do so, the plaintiffs must provide factual support sufficient to show that they will be able to carry their evidentiary burden of proof at trial.

Plaintiffs rely on work order 54117 and Rabon's testimony in support of their claim that LCG had actual or constructive knowledge that the advance turn warning sign was down prior to the December 20, 2002 accident. They argue that Rabon was not credible as a witness, as his testimony was inconsistent and because he was coached to testify that the sign was leaning, rather than down. A review of the testimony they relied on reveals only one statement that could be construed as being inconsistent with his other statements. The plaintiffs point to the following testimony:

Q Now, after Hurricane Lili, when there was a work order that you prepared, did you write "Lili" on the top of the work order if it was related to that?

A Right, right.

6

Q    So I'm looking at Work Order No. 54117. It's (sic) got "Lili."

A    "Lili."

Q    Is that your handwriting?

A    That's it.

                    . . . .

Q    Now, without looking at any paperwork, is it possible for you here today to remember or recall signs, what conditions the signs were in when you made these work orders?

A    Not really.

Q    And I've got 25 work orders here that y'all have given me. If I were tell (sic) you what was the condition of the stop sign at the corner of Landry Road and St. Pierre (sic) or Riceland Road, I mean, you can't remember?

A    No.

Q    So the only way for you to recall today the condition of the sign was if you can figure out what's in this report?

A    Right.

Q    You don't have any independent recollection two years ago or however many months it's (sic) been –

A    No.

Q    – of what the condition of the sign was; is that true?

A    Well, I do know, if I did write a work order for it to reinstall it, it was just leaning. Like I said, if it's down on the ground, I'll ask that they go fix it.

Q    That's referring to your report?

A    Right.

Q    You don't have any independent recollection –

7

A      Well, no.

Q      – of the sign?  I mean there's thousands of signs?

A      Right.

The plaintiffs point to further testimony where Rabon admitted that all he could tell from the work order was that the sign needed to be reinstalled; he could not tell anything else about the sign, whether it was leaning or whether it was down. Based on these inconsistencies, the plaintiffs argue that the best evidence of LCG's prior notice is the work order itself.  They further argue that the credibility of a witness is a question of fact which should be considered by the trial court in ruling on a motion for summary judgment.  In *Hines*, the supreme court stated:

> Application of the general rule that a court, ruling on a motion for summary judgment, must accept an affiant's testimony or affidavit as credible or true is not appropriate in this particular case, where the mover's testimony absolving himself from liability contains substantive contradictions or discrepancies that would ordinarily tend to call his credibility into doubt if presented to a fact-finder.

> While the general rule is that courts entertaining a motion for summary judgment are not to decide credibility issues, the defendant's differing stories as to the location of the tree that allegedly fell and allowed the cattle to escape found in his deposition testimony sufficiently demonstrates that the defendant cattle owner's credibility is indeed a genuine and material issue better suited for resolution by trial. The purpose of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matshshita [Electrical Industrial Co. v. Zenith Radio Corp]*, 475 U.S. [574,] 587, 106 S.Ct. [1348,] 1356 [(1986)] (internal quotations omitted).  The plaintiffs here had the opportunity to depose the defendant to test his veracity, and in our view they were able to "shake" his original version of the facts and raise significant issues of credibility. *Cf. Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.1989).  Accordingly, we find that the plaintiffs have adequately raised a challenge to the defendant's credibility by pointing out inconsistencies in relevant parts of his testimony, and, therefore, the defendant is not entitled to summary judgment on the issue of rebutting the presumption of negligence against him.

8

*Hines*, 876 So.2d at 768-69.

Although summary judgment is favored and should be construed to accomplish the just, speedy, and inexpensive determination of every action subject to it, all doubt must be resolved in favor of the party opposing the motion. La.Code Civ.P. art. 966(A)(2); *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049. Here, we have Rabon's testimony that he had no independent recollection of the sign in question, as well as the October 30, 2002 work order indicating that reinstallment of the sign was necessary. Opposing this, we have further testimony from Rabon that the sign was leaning only slightly when he surveyed it, because if it had been down he would have called the sign truck to replace the sign that day. Thus, we find that Rabon's statements present a genuine issue of material fact in that reasonable persons could reach different conclusions based on them. As LCG relies on these statements to absolve itself of liability, we think that it should be left to the trier of fact in a trial on the merits to determine whether he is credible. As the grant of summary judgment would be harsh in this instance, we find that it was properly denied.

**LOUISIANA HOMELAND SECURITY AND
EMERGENCY ASSISTANCE AND DISASTER ACT**

LCG next argues that the trial court erred in finding that it was not immune from civil liability as a result of the state of emergency declared in advance of and in the wake of Hurricane Lili.

LCG argues that it is entitled to immunity as the alleged act of negligence occurred on October 30, 2002, when Rabon inspected Landry Road. It argues that even if the sign was down on October 20, it is entitled to immunity for the way it responded to the emergency as warranted under the Louisiana Homeland

9

Security and Emergency Assistance and Disaster Act, found in La.R.S. 29:721 et seq.

The definition of "disaster" under the Act includes the result of a hurricane that causes property damage. La.R.S. 29:723(1). As defined, "emergency" includes actual or threatened conditions created by a disaster and includes national and state emergencies. La.R.S. 723(2)(a) and (2)(b)(iii). Louisiana Revised Statute 29:735 provides that political subdivisions of the state, such as LCG, shall not be liable for injuries sustained to persons or property of others while engaged in "emergency preparedness activities," which includes recovery from disasters such as hurricanes. La.R.S. 29:735(3).

Hurricane Lili struck the coast of Louisiana on October 3, 2002. A state of emergency was declared by Governor Mike Foster on October 1, 2002, which was extended for an additional forty-five days on October 31, 2002. A state of local disaster and/or emergency was declared in Lafayette Parish on October 1, 2002, by Walter Comeaux, the City-Parish President of the LCG. The accident in question occurred on December 20, 2002. Governor Foster's declaration of emergency expired on December 14, 2002. Thus, the subject accident occurred after the state of emergency expired; moreover, the "actual or threatened condition" of Hurricane Lili had obviously long been over by December 20.

Clearly, LCG was provided with immunity from negligence in its efforts to remedy the effects of Hurricane Lili during the state of emergency absent a showing of willful misconduct. *Castille v. Lafayette City-Parish Consol. Gov't*, 04-1569 (La.App. 3 Cir. 3/2/05), 896 So.2d 1261, *writ denied*, 05-0860 (La. 5/1305), 902 So.2d 1029. However, at the time the state of emergency ended, LCG was no

10

longer afforded immunity by the Louisiana Homeland Security and Emergency Assistance and Disaster Act. Therefore, we find that the trial court properly denied its motion for summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this writ are assessed to the defendant-relator, Lafayette City-Parish Consolidated Government.

**WRIT DENIED.**

11